IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

MAJDOLEEN A. KHATTAB,               )
Administrator, Estate of Affan      )
Mohamad Khattab, Deceased,          )
                                    )
            Plaintiff,              )
                                    )
v.                                  )  Civil Action No. 3:21cv789–HEH
                                    )
BERKLEY REGIONAL INSURANCE          )
COMPANY, *et al.*,                  )
                                    )
            Defendants.             )

**MEMORANDUM OPINION**
**(Denying Plaintiff's Motion for Summary Judgment and**
**Granting Defendants' Motions for Summary Judgment)**

THIS MATTER is before the Court on Majdoleen A. Khattab's ("Plaintiff"), Berkley Regional Insurance Company's ("Berkley"), and Integon General Insurance Corporation's ("Integon") cross-motions for summary judgment. (ECF Nos. 16, 18, 20.) The parties seek summary judgment to determine the applicable limit for underinsured motorist coverage in the insurance policy issued by Berkley (the "Policy"). Plaintiff asserts the limit is $1,000,000 and Defendants contend it is $70,000. The parties have submitted memoranda in support of their respective positions. The Court heard oral argument on April 6, 2022 and the cross-motions are now ripe for review. For the reasons stated herein, the Court will deny Plaintiff's Motion for Summary Judgment and Grant Defendants' Motions for Summary Judgment.[1]

---

[1] Integon's Motion for Summary Judgment merely "incorporate[d] by reference . . . all facts,

## I. BACKGROUND

Typically, in reviewing cross-motions for summary judgment, the Court will resolve any factual disputes and "competing, rational inferences" in the light most favorable to the opposing party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citation omitted). However, in this case, the parties cooperated and submitted Stipulations, which comprise the entire evidentiary record. There is no dispute as to the facts of this case, and thus, the following narrative represents the undisputed facts for the purpose of resolving the cross-motions for summary judgment.

Plaintiff is the widow of Affan Mohamad Khattab (the "deceased") and Administratrix of his estate. (Stips. at 1, ECF No. 15.) Plaintiff is currently pursuing a wrongful death action in the Circuit Court of Henrico County, Virginia (the "underlying suit") to "recover compensatory and punitive damages for the alleged wrongful death of her decedent." (*Id.* ¶ 1.) In the underlying suit, Plaintiff alleges that Diane Elaine Harvey was negligently driving her vehicle when she struck the deceased. (*Id.* ¶ 2.) Plaintiff further alleges that the deceased "died as a result of[] Harvey's negligence." (*Id.*) Plaintiff seeks up to $10,350,000 in compensatory and punitive damages. (*Id.*) Harvey is

---

arguments and documents set forth in Berkley Regional Insurance Company's Motion for Summary Judgment and Memorandum in Support of Summary Judgment." (ECF No. 20.) Thus, when the Court refers to Berkley's Motion for Summary Judgment, it subsumes Integon's. The Court will still refer to Berkley and Integon collectively as "Defendants."

insured under a liability policy with a maximum of only $100,000 for personal injury or death claims.[2] (Stips. ¶ 3.)

At the time of the accident, the deceased was working as a driver for Richmond Express, Inc. ("Richmond Express"). (*Id.* ¶ 4.) The vehicle the deceased was operating was owned by Richmond Express and insured under their Policy. (*Id.* ¶¶ 2, 4.) Integon separately insured the deceased. (Berkley's Mem. Supp. at 8, ECF No. 19.)

The Policy was issued in January 2021. (Policy at 74, ECF No 15-1.) Along with the Policy, Berkley issued an Uninsured Motorist Endorsement ("Endorsement"), as well as a notice entitled "Virginia Important Notice Regarding Uninsured Motorists Coverage" ("Notice") and a Selection Form entitled "Virginia Selection of Lower Uninsured Motorists Coverage" ("Selection Form"). (ECF Nos. 15-2, 15-3, 15-4.) The Endorsement specifies and details coverage for uninsured and underinsured motor vehicles as part of the Policy (Endorsement at 2, ECF No. 15-2), and the Notice notifies the insured that uninsured/underinsured motorist coverage would be equal to the liability limits in the Policy unless a named insured expressly selects to reduce those limits via the Selection Form (Notice, ECF No. 15-3). An agent of Richmond Express selected to lower the "Uninsured Motorists Coverage" to $70,000 on the Selection Form. (Selection Form at 2, ECF No. 15-4; Stips. ¶ 7.)

---

[2] Because Harvey could be underinsured, Plaintiff served Berkley and Integon as additional parties in the underlying suit stating they "may be liable for some or all of the damage sought in the wrongful death action by virtue of their having issued policies which do or may provide uninsured motorist and underinsured motorist coverages." (Pl.'s Mem. Supp. at 3, ECF No. 17.)

3

In addition to the underlying suit, Plaintiff filed a declaratory judgment action against Berkley and Integon in the Circuit Court of Henrico County alleging that Harvey's personal auto liability policy is only $100,000 and will not fully compensate Plaintiff for the damages she is seeking in the underlying suit. (Compl. ¶ 11, ECF No. 1-2.) Thus, Plaintiff claims that the underinsured motorist coverage included in the Berkley and Integon policies should supplement Harvey's insurance. (*Id.* at 5–6.) The parties agree that the uninsured motorist coverage in the Integon Policy is $50,000. (Notice of Removal ¶ 6, ECF No. 1.) They, however, do not agree on the coverage amount in Berkley's Policy. Plaintiff asserts the limit of uninsured motorist coverage in the Berkley Policy is $1,000,000. (*Id.*)

## II. STANDARD OF REVIEW

The standard of review for cross-motions for summary judgment is well settled in the Fourth Circuit:

> On cross-motions for summary judgment, a district court should "rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the [Federal Rule of Civil Procedure] 56 standard." Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

*Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 156 (4th Cir. 2010) (alteration in original) (first quoting *Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999), and then quoting Fed. R. Civ. P. 56(c)).

The relevant inquiry in the summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is

4

so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original). A material fact is one that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A genuine issue concerning a material fact only arises when the evidence, viewed in the light most favorable to the non-moving party, is sufficient to allow a reasonable trier of fact to return a verdict in that party's favor. *Id.*

To defeat an otherwise properly supported motion for summary judgment, the non-moving party must rely on more than conclusory allegations, "mere speculation or the building of one inference upon another" or "the mere existence of a scintilla of evidence" concerning a material fact. *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997) (first quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985), and then quoting *Anderson*, 477 U.S. at 252). Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate." *Thompson Everett, Inc. v. Nat'l Cable Advert., L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995) (citing *Anderson* 477 U.S. at 252). "Thus, if the

evidence is 'merely colorable' or 'not sufficiently probative,' it may not be adequate to oppose entry of summary judgment." *Id.* (citing *Anderson*, 477 U.S. at 249–50). Of course, the Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. *See Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

### III. ANALYSIS

Plaintiff contends that Richmond Express did not properly communicate a decision to reduce underinsured motorist coverage from $1,000,000 to $70,000 on the Selection Form under Va. Code § 38.2-2202(B). (Pl.'s Mem. Supp. at 5.) Defendants, on the other hand, assert that the "plain language of the Selection Form, the Policy, and Virginia Code § 38.2-2206" demonstrate that Richmond Express properly reduced the limit for underinsured motorist coverage. (Berkley's Mem. Supp. at 3.)

Va. Code § 38.2-2206 requires that all policies for motor vehicle liability insurance "contain[] an endorsement or provisions undertaking to pay the insured all sums that he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." The limit of this coverage "shall equal but not exceed the limits of the liability insurance provided by the policy, unless any one named insured rejects the additional uninsured motorist insurance coverage." *Id.* The named insured reducing the additional coverage must notify the insurer as dictated in § 38.2-2202(B). *Id.* Additionally, the endorsement required by § 38.2-2206 obligates the insurer to pay for damages caused by an *underinsured* vehicle. *Id.* ("The endorsement or provisions

6

shall also obligate the insurer to make payment for bodily injury . . . caused by the operation or use of an underinsured motor vehicle.")

Va. Code § 38.2-2202 then sets out the required notice that must be printed in boldface type and enclosed with any new insurance policy notifying the insured of uninsured and underinsured coverage limits and the option to reduce those limits. The only language in § 38.2-2202 that describes the procedure for the insured to actually reduce those limits is that "the insurer may require that a request to reduce coverage be in writing." Other than that, the statute is silent as to any required language, structure, or font for the selection of lower limits.

When Berkley issued the Policy to Richmond Express, it included an Endorsement detailing the uninsured motorist coverage, as well as a Notice with the exact language required by § 38.2-2202. Plaintiff concedes that the Notice complied with §§ 38.2-2202 and 2206, however, Plaintiff takes issue with the language used on the Selection Form on which Richmond Express actually made its selection to lower the limits. (Pl.'s Mem. Supp. at 5.) Specifically, Plaintiff argues that §§ 38.2-2202 and 2206 mandate the use of the term "uninsured/underinsured" on the Selection Form and, because the two are defined separately in § 38.2-2206, they may not be used interchangeably. (*Id.* at 5–7.) Thus, Plaintiff contends that because the Selection Form in this case only made reference to "Uninsured Motorists Coverage" rather than "uninsured/underinsured," it, at most, limited *uninsured* motorist coverage and was inadequate to reduce the limits of underinsured motorist coverage. (*Id.*)

7

Focusing on the operative language of § 38.2-2206, Defendants first argue that the statute clearly intends there to be just one endorsement that provides for uninsured *and* underinsured motorist coverage. (Berkley's Mem. Supp. at 13.) As for § 38.2-2202, Defendants note that the statute mandates what language is required for the insurer's *notice* to the insured, not the insured's *selection*. (Berkley's Resp. Opp'n at 5, ECF No. 22.) Defendants argue § 38.2-2202 says the insured "may" require a written rejection/selection, which "demonstrates that a written rejection/selection form is not even needed—let alone one with the hyper-specific language [Plaintiff] claims is 'required.'" (*Id.* at 6.)

Defendants are correct that the language in § 38.2-2202 only mandates requirements for the notice given to the insured. Neither §§ 38.2-2202 or 2206 specify any language required for the insured's selection of different limits for uninsured or underinsured motorist coverage. While § 38.2-2202 requires the use of the term "uninsured/underinsured" in the notice, it does not dictate that it must also be used in the selection process. In fact, § 38.2-2202 does not even require a written selection of reduced limits at all. Thus, in looking at the plain language of the uninsured motorist coverage statutes, contrary to Plaintiff's contention, the Selection Form was not required to include any specific language.

To support her argument, Plaintiff relies heavily on one case from the United States Court of Appeals for the Fourth Circuit, *White v. Nat'l Union First. Ins. Co.*, 913

8

F.2d 165 (4th Cir. 1990).[3] *White* similarly involved an employee driving a truck for an employer who had liability insurance. 913 F.2d at 166. However, the insured in *White* signed the uninsured motorist coverage selection form but failed to check *any* box indicating any limitation on the extent of coverage they wished the insurer to provide. *Id.* at 166. The Fourth Circuit said "the intent of the parties as it affects the construction of the policy is largely irrelevant . . . [because] it does not deal with how to interpret an ambiguous or missing term . . . [and] we must decide if [the insured] complied with a state regulatory statute." *Id.* at 169. The Fourth Circuit found that the insured's failure to check any box reducing the uninsured motorist coverage resulted in the default coverage equal to the existing policy's liability limits. *Id.* Plaintiff, and a few other courts, have read *White* to mean that hyper-technical compliance with §§ 38.2-2202 and 2206 is required. Plaintiff asserts that because the second page of the form only said, "I reject Uninsured Motorists Coverage" and not *underinsured* motorist coverage, the effect was, like in *White*, no reduction at all of underinsured motorist coverage. (Pl.'s Resp. Opp'n at 5, ECF No. 21.)

However, as Defendants note, recent case law has declined to follow *White's* proposition of hyper-technical compliance and, instead, has focused on substantial compliance with the statutes. (Berkley's Mem. Supp. at 10); *Melton v. Discover Prop. & Cas. Ins. Co.*, 760 F. Supp. 2d 633, 637 (W.D. Va. 2011); *Arnold v. Liberty Mut. Ins. Co.*,

---

[3] Other than this case, Plaintiff relies entirely on state court cases from Louisiana, Florida, and Ohio. (Pl.'s Mem. in Supp. at 9–10.) However, the issue in the instant case involves the interpretation of a specific Virginia statute, and so, those cases are not particularly instructive.

9

866 F. Supp. 955, 958 (W.D. Va. 1994). Thus, even if the statute was read to require use of the term "uninsured/underinsured," which is doubtful, the Selection Form still substantially complied with the statutes because, as discussed below, the Selection Form defined "Uninsured Motorists Coverage" to include underinsured motor vehicles.

Most reviewing courts have read *White* to apply only in situations where the insured failed to select *any* reduction or waiver on the form, not cases where the selection was merely ambiguous. *Jefferson v. Harco Nat. Ins. Co.*, No. 3:08cv486, 2009 WL 1765670, at *7 (E.D. Va. June 18, 2009); *Santens v. Progressive Gulf Ins. Co.*, 56 F. Supp. 3d 788, 800 (E.D. Va. 2014); *Melton*, 760 F. Supp. 2d at 637. If the selection form is ambiguous, more recent cases have taken a flexible approach by looking to the parties' actions and intent. *Jefferson*, 2009 WL 1765670, at *8; *Santens*, 56 F. Supp. 3d at 800. This case is distinguishable from *White* because Richmond Express *did* select lower limits on the selection form. (Selection Form at 2.) It specifically selected $70,000 on the selection form, signed the form, and returned it to Berkley. (*Id.*) Plaintiff, however, claims that the language of the Endorsement, Notice, and Selection Form creates ambiguity as to whether any selection was made for *under*insured motorist coverage such that the Court must resolve the ambiguity in favor of higher coverage. *See Santens*, 56 F. Supp. 3d 788, 800 (E.D. Va. 2014).

In interpreting an insurance contract, Virginia law mandates that each phrase of a contract be given meaning. *Travco Ins. Co. v. Ward*, 736 S.E.2d 321, 324 (Va. 2012); (Berkley's Resp. Opp'n at 3.) "No contract provision will be treated as meaningless if a reasonable meaning can be given to it . . . ." *TRAVCO Ins. Co.*, 736 S.E.2d at 324.

10

Unless a court is interpreting statutorily required language, it should look to the plain meaning of a phrase and attribute a meaning that would be reasonable to an insured and insurer. *Erie Ins. Exch. v. EPC MD 15, LLC*, 822 S.E.2d 351, 354 (Va. 2019). If the plain meaning is undeterminable, then the court must construe the ambiguity against the drafter, here the insurer. *Id.* Additionally, a court should not look to individual words in isolated contexts, it should construe the contract as a whole. *Id.*; *see Nationwide Mut. Ins. Co. v. Akers*, 340 F.2d 150, 154 (4th Cir. 1965). Here, the contract includes the Policy, Endorsement, Notice, and Selection Form.

As discussed above, §§ 38.2-2202 and 2206 require specific language in the insurer's notice to the insured that they may opt to reduce the limits of uninsured/underinsured coverage. Nothing in either of those statutes mandates specific language for the *insured's reduction* of those limits, and case law states that substantial compliance with those statutes is enough to effectuate a reduction. *Melton v. Discover Prop. & Cas. Ins. Co.*, 760 F. Supp. 2d 633, 637 (W.D. Va. 2011); *Arnold v. Liberty Mut. Ins. Co.*, 866 F. Supp. 955, 958 (W.D. Va. 1994). Because the Selection Form is not statutorily mandated, nor does it include statutorily required language, the Court must look to the plain meaning of uninsured and underinsured motorist coverage in the Policy and Endorsement.

The Endorsement clearly defines "Uninsured Motorist Coverage" to include underinsured motor vehicles.[4] (Endorsement at 1–2.) The Selection Form, which directs

---

[4] "'Uninsured motor vehicle' means a motor vehicle . . . b. [w]hich is an 'underinsured motor vehicle'." (Endorsement at 1–2.)

11

the insured to read and review the document carefully, additionally defines "Uninsured Motorist Coverage" as including underinsured motor vehicles. (Selection Form at 1.) Plaintiff pointed out at the hearing that on this same page in a later paragraph, the form mentions "uninsured motorist coverage." (*Id.*) Plaintiff rejoins that the use of lowercase "uninsured" rather than the capitalized "Uninsured Motorist Coverage," creates confusion. However, the next page of the Selection Form, where the insured actually makes their selection, expressly states, "I reject Uninsured Motorists Coverage." (*Id.* at 2.) The use of the capitalized term "Uninsured Motorist Coverage," indicates that it has the same meaning as defined on page one of the Selection Form (*id.*) and in the Endorsement (Endorsement at 1–2). The plain meaning of these words, as defined in the Endorsement and Selection Form, clearly indicates that both parties would understand "Uninsured Motorist Coverage" to include underinsured motor vehicles. Further, other courts have noted that "Virginia Code § 38.2-2206 treats [uninsured motorists and underinsured motorists] as the same and the terms are generally used interchangeably." *Melton*, 760 F. Supp. 2d at 634 n.2; *see White*, 913 F.2d at 166 n.2 (noting that "[t]he uninsured motorist insurance at issue here covers damages caused by an underinsured motor vehicle" and referring to the coverage as "uninsured motorist ('UM') coverage").

Thus, there is no ambiguity as to whether "Uninsured Motorists Coverage" includes uninsured *and* underinsured motorist coverage. To find ambiguity, particularly with the second page of the Selection Form, would result in a conclusion that ignores the clearly defined term of "Uninsured Motorists Coverage." It also appears from the statute, and case law interpreting it, that uninsured and underinsured are often used

interchangeably.[5] The Court recognizes what is at stake for Plaintiff in this case, however, the Court will not find statutory requirements where there are none, nor will the Court read ambiguity into a contract where the plain meaning can be ascertained. Consequently, the Court finds that Richmond Express properly reduced its underinsured motorist coverage limits to $70,000.

Berkley additionally asks the Court to declare that, because Harvey's liability coverage is $100,000, the "Policy limits are fully offset such that Berkley has no exposure in connection with the Accident and the corresponding Wrongful Death Action." (Berkley's Mem. Supp. at 16–17.) Section 38.2-2206 states that "[a] motor vehicle is 'uninsured' when . . . the total amount of bodily injury and property damage coverage applicable to the operation or use of the motor vehicle and available for payment . . . is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle." Thus, if Harvey's liability coverage is $100,000, which the parties stipulate it is, then the $70,000 coverage in the Policy is offset by Harvey's higher coverage.

## IV. CONCLUSION

The Court will deny Plaintiff's Motion for Summary Judgment and grant Defendants' Motions for Summary Judgment because the policy limit for uninsured and underinsured

---

[5] Although only one case specifically makes this claim, the statute itself and other cases seem to conflate the two words. *See* §§ 38.2-2202, 2206; *Melton*, 760 F. Supp. 2d at 634 n.2; *White*, 913 F.2d at 166 n.2; *Jefferson*, 2009 WL 1765670, at *1–2 (referencing uninsured/underinsured motorist as "('UM')" in a case involving an underinsured motorist).

13

motorist coverage was properly reduced to $70,000 and this amount is offset by Harvey's $100,000 liability coverage.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: April 15, 2022
Richmond, Virginia

14